Kathleen C. Jeffries (SBN 110362)
kjeffries@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 560
Pasadena, CA 91101-5671
Tel: 626-795-4700
Fax: 626-795-4790

Christopher J. Eckhart (SBN 331414)
ceckhart@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
Tel: 317-637-1777
Fax: 317-687-2414

Attorneys for Defendant
WILSON LOGISTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMAS RUFF, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILSON LOGISTICS, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT** |

PLEASE TAKE NOTICE that Defendant, Wilson Logistics, Inc., removes this case from the Superior Court of Alameda County, California, to the U.S. District Court for the Northern District of California, San Francisco or Oakland Division. In support of removal, Defendant states the following:

**1.    The Action**. Plaintiff, Brian Thomas Ruff, filed his Class Action Complaint (Complaint), captioned *Brian Thomas Ruff, individually and on behalf of all others similarly situated v. Wilson Logistics, Inc.; and DOES 1 to 10, inclusive*, Case No. 21CV004428, in the Superior Court of Alameda County, California, on December 21, 2021. The Complaint alleges Defendant violated California law by: (1) failing to pay minimum wages, Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1199, and the IWC Wage Order; (2) failing to pay overtime wage, Cal. Lab. Code §§ 510,

1194, 1198, and the IWC Wage Order; (3) failing to provide meal periods, Cal. Lab. Code §§ 226.7, 512 and the IWC Wage Order; (4) failing to provide rest breaks, Cal. Lab. Code §§ 226.7 and the IWC Wage Order; (5) failing to pay all wages upon termination, Cal. Lab. Code §§ 201, 202, and 203 and the IWC Wage Order; (6) failing to furnish accurate and itemized wage statements, Cal. Lab. Code § 226 and the IWC Wage Order; (7) failing to reimburse all business expenses, Cal. Lab. Code § 2802 and the IWC Wage Order; (8) unlawful deduction of wages, Cal. Lab. Code § 221; and (9) engaging in unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*. (UCL). Plaintiff seeks damages and penalties applicable for each Labor Code violation, and restitution and an injunction under the UCL. Copies of all pleadings and papers filed in the Superior Court of Alameda County, California, of which Defendant is aware are filed herewith as *Exhibit A* to this Notice.

**2.   Statutory Grounds for Removal.** This action is removable under 28 U.S.C. § 1441(a), which provides for the removal of state court civil actions over which United States district courts have original jurisdiction. As set forth below, this Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the case is a between citizens of different states.

**3.   Citizenship of the Parties.** Upon information and belief, Plaintiff resides in California and is a citizen of California. *See Class Action Complaint* (Complaint), ¶ 11; *see also Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014) (holding that a party may plead allegations of diversity based on information and belief).

Defendant is a corporation incorporated under the laws of Missouri with its principal place of business located in Springfield, Missouri. Therefore, Defendant is a citizen of Missouri. 28 U.S.C. § 1332(c); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Plaintiff's naming of unidentified "Doe" defendants is irrelevant to removability. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Kruso v. Int'l Tel. & Tele. Corp.*, 872 F.2d 1416, 1424 (9th Cir. 1989) (the naming of Doe defendants cannot defeat diversity jurisdiction).

Plaintiff and Defendant are citizens of different states, and the diversity requirements of 28 U.S.C. § 1332(a)(1) are satisfied.

**4.     Amount in Controversy – 28 U.S.C. § 1332(a).** Without admitting that Defendant engaged in any improper conduct, the amount in controversy in this case, exclusive of interest and costs, exceeds $75,000.00 by virtue of Plaintiff's individual claims.[1]

a.     <u>Reimbursement of Expenses under California Labor Code § 2802.</u> – In his Seventh Cause of Action, Plaintiff claims that Defendant violated California Labor Code § 2802 (Section 2802) by "intentionally and willfully fail[ing] to fully reimburse Plaintiff and class members for business-related costs and expenses." *Complaint*, ¶ 97. In the Complaint, Plaintiff identifies several categories of items for which he seeks reimbursement, including amounts spent on truck maintenance, tags, fees, fuel, truck wear and tear, gas mileage, other transportation costs, and cell phone usage. *Complaint*, ¶¶ 93-95.

Defendant denies that Plaintiff was an employee entitled to reimbursement of any of the alleged expenses he incurred in the performance of his contract with Defendant. Plaintiff provided services as an independent contractor under which he received payment for all of his services. However, Defendant's records show that in the time period between November 5, 2020, and April 21, 2021, Plaintiff incurred $31,197.37 in expenses for truck maintenance, tags, fees, fuel, taxes, and related transportation costs.

With respect to Plaintiff's cell phone expenses, Section 2802 requires that "[w]hen employees must use their personal cell phones for work-related calls," their employer must reimburse them for "a reasonable percentage of their cell phone bills." *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137 (2014). According to the U.S. Bureau of Labor Statistics data for the cost of wireless telephone services in the United States from November 2020 to April 2021, the average monthly cost of wireless telephone services in cities in the United States in the period was $46.36; which would make the average weekly cost approximately $10.82/week. *See* Wireless Telephone Services in U.S. City Average from 2011 to 2022, U.S. BUREAU OF LABOR STATISTICS,

---

[1] When the claim of an individual named plaintiff in a class action satisfies the amount in controversy requirement, a court has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims of other class members, even if such other claims do not meet the amount in controversy requirement. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Therefore, Defendant need only demonstrate that the claims of Plaintiff exceed the jurisdictional threshold.

https://data.bls.gov/timeseries/CURR0000SEED03 (last visited Feb. 16, 2022). Plaintiff worked approximately 22 weeks between November 1, 2020 and April 30, 2021, assuming a reimbursement of 50% of the average weekly cost of $10.82 is a reasonable percentage of cell phone expenses incurred by Plaintiff, his claim for reimbursement of cell phone expenses places $119.02 in controversy ($10.82/week x 50% x 22 weeks).

In total, Plaintiff's Section 2802 claim puts $31,316.39 in controversy.

b. <u>Unlawful Deduction of Wages under California Labor Code § 221.</u> In his Eighth Cause of Action, Plaintiff alleges that Defendant violated California Labor Code § 221 (Section 221) when it unlawfully deducted from his wages "fees for using the truck provided by Defendant[] and other fees related to usage of the truck." *Complaint*, ¶¶ 100-101.

Defendant's records show that in the time period between November 5, 2020, and April 21, 2021, at Plaintiff's request, Defendant deducted $25,054.27 in lease payments from Plaintiff's weekly settlements.

Consequently, Plaintiff's claim under Section 221 puts $25,054.27 in controversy.

c. <u>Failure to Pay Minimum Wage for Non-Driving Work.</u> In his First Cause of Action, Plaintiff alleges that "Defendant[] paid on a per job basis and therefore did not pay the minimum wage for all non-productive time," and, therefore, Defendant violated California Labor Code §§ 1194 and 1197 (Sections 1194 and 1197). *Complaint*, ¶¶ 41-42. Plaintiff claims he is also entitled to recover liquidated damages in an amount equal to the wages Defendant allegedly unlawfully withheld. *Id.* ¶ 44.

For purposes of identifying the amount placed in controversy by Plaintiff's minimum wage claim, Defendant assumes that Plaintiff spent 15 minutes each day he worked performing a pre-trip inspection, and 15 minutes a day performing a post-trip inspection, for a total of 30 minutes per day performing inspections. In addition, Defendant assumes that for each load Plaintiff agreed to haul, he spent 30 minutes of non-driving time picking up the load and 30 minutes of non-driving time delivering the load. Further, Defendant assumes that for each fuel stop Plaintiff made, it took him 30 minutes to perform all fueling-related tasks.

/ / /

1        i.  <u>Amount in Controversy to Perform Pre-trip and Post-trip Inspections</u> - To
2 estimate the number of days Plaintiff worked in each year he was under contract with Defendant,
3 Defendant used its records to determine the number of miles Plaintiff drove, 48,427.4 miles. Using an
4 average of 50 miles-per-hour (MPH), Plaintiff worked approximately 968.548 hours (48,427.4 miles /
5 50 MPH). Assuming Plaintiff worked ten hours per day, Plaintiff worked approximately 97 days
6 (968.548 hours / 10 hours/day = 96.8548 days).

7   Applying the ratio of the number of loads Plaintiff hauled in 2020 (18) versus his total number
8 of loads (49); and the ratio of the number of loads Plaintiff hauled in 2021 (31) versus his total
9 number of loads (49), to his 97 days of work, Defendant estimates that Plaintiff spent 36 days
10 working in 2020 (97 x (18/69)) and 61 days working in 2021 (97 x (31/69)).

11   Assuming Plaintiff spent 15 minutes per work day doing a pre-trip inspection and 15 minutes
12 per work day doing a post-trip inspection, Defendant estimates that Plaintiff's unpaid work claim for
13 these daily non-driving tasks puts at least $234.00 in controversy in 2020 (36 days x .5 hours per day
14 x $13/hour) and at least $427.00 in controversy in 2021 (61 days x .5 hours per day x $14/hour), for a
15 total of at least $661.00 in controversy for Defendant's alleged failure to pay Plaintiff for pre-trip and
16 post-trip inspections each day.

17     ii.  <u>Amount in Controversy for Pickup and Delivery Non-Driving Time</u> – As noted
18 in the previous subsection, Defendant's records indicate that Plaintiff agreed to haul 18 loads in 2020
19 and 31 loads in 2021. Assuming that for each load Plaintiff spent, on average, 30 minutes at a shipper
20 loading and preparing to leave, and 30 minutes at a consignee unloading and preparing to leave, this
21 part of Plaintiff's unpaid non-driving work claim puts at least $234.00 in controversy in 2020 (18
22 loads x 1 hour total shipper-consignee time/load x $13/hour), and at least $434.00 in controversy in
23 2021 (31 loads x 1 hour total shipper-consignee time/load x $14/hour), for a total of $668.00 in
24 controversy.

25     iii.  <u>Amount in Controversy for Fueling Tasks</u> – Defendant's records indicate that
26 Plaintiff stopped for fuel 15 times in 2020 and 37 times in 2021. Assuming that it took Plaintiff 30
27 minutes to perform all fuel-stop related tasks, this component of Plaintiff's alleged unpaid work claim
28 puts at least $356.50 in controversy, $97.50 in 2020 (15 stops x 0.5 hours/stop x $13/hour), and at

least $259.00 in 2021 (37 stops x 0.5 hours/stop x $13/hour).

In summary, Plaintiff's claim alleging that Defendant failed to pay him for non-driving tasks puts in controversy a total of at least $1,685.00 in allegedly unpaid wages ($661.00 (inspections) + $668.00 (shipper-consignee time) + $356.50 (fueling)). Plaintiff could also recover liquidated damages in an amount equal to the amount of allegedly unpaid wages of $1,685.50. Consequently, the total amount in controversy for Plaintiff's minimum wage claim is at least $3,371.00.

        d.      <u>Failure to Pay Overtime.</u> In his Second Cause of Action, Plaintiff alleges that "Defendant[] failed to pay Plaintiff … overtime wages for all overtime hours worked when Plaintiff … worked in excess of eight (8) hours in a day, forty (40) hours in a week and/or for a seventh consecutive day of work in a workweek, or when Plaintiff . . . worked in excess of twelve (12) hours in a day and/or in excess of eight (8) hours on the seventh day of work in a work week." *Complaint*, ¶ 52. Plaintiff seeks "the unpaid balance of overtime and double time compensation, as required by California law, . . . [California] Labor Code §§ 510 and 1198" (Sections 510 and 1198). *Id.* ¶ 54.

Assuming Plaintiff worked, on average, a 10-hour day, Defendant's records suggest that Plaintiff worked approximately 36, 10-hour days in 2020, and approximately 61, 10-hour days in 2021. Assuming that Defendant allegedly failed to pay Plaintiff two hours of overtime pay at time-and-a-half for each of those days, Plaintiff's overtime claim puts a total of at least $1,891.50 of unpaid overtime wages in controversy ($702.00 in 2020 (36 days x 2 hours/day x 1.5 x $13/hour), and $1,189.50 in 2021 (61 days x 2 hours/day x 1.5 x $14/hour)). Plaintiff could also recover liquidated damages in an amount equal to the amount of allegedly unpaid overtime wages of $1,891.50. Consequently, the total amount in controversy on Plaintiff's claim for allegedly unpaid overtime is at least $3,783.00.

        e.      <u>Waiting Time Penalty.</u> In his Fifth Cause of Action, Plaintiff alleges that Defendant "willfully failed to pay Plaintiff . . . all [his] earned wages upon termination including, but not limited to, minimum wages, either at the time of discharge or within seventy-two (72) hours of [his] leaving Defendant['s] employ, in violation of California Labor Code §§ 201 and 202." *Complaint*, ¶¶ 76-77. Plaintiff seeks penalties under California Labor Code § 203 (Section 203) "for each day [he was] not paid, at [his] regular rate[] of pay up to a thirty (30) day maximum." *Id.* ¶ 79.

By claiming that Defendant misclassified him as an independent contractor, failed to pay him minimum wage and failed to pay him within 72 hours after he voluntarily terminated his contract with Defendant, Plaintiff has put at least $3,360.00 in controversy for Defendant's alleged violation of Section 203 (8 hours/day x 30 days x $14/hour).

  f. <u>Inaccurate Itemized Wage Statements.</u> In his Sixth Cause of Action, Plaintiff alleges that Defendant "intentionally and willfully failed to provide Plaintiff … with complete and accurate wages statements. The deficiencies include, among other things, the failure to list gross wages earned, net wages earned, hours worked, and all applicable hourly rates in effect during the pay period." *Complaint*, ¶ 84. Plaintiff further alleges that Defendant's "violations of California Labor Code § 226 (a) [(Section 226(a))] prevent Plaintiff … from knowing, understanding and disputing the ages paid to [him], and resulted in an unjustified economic enrichment to Defendant[]." *Id*. ¶ 87.

By claiming that Defendant misclassified him as an independent contractor and that Defendant's settlement statements did not contain the information required by Sections 226(a) and 226.2, Plaintiff has put an additional $2,150.00 in controversy (22 settlement statements: $50 + ($100 x 21)).

  g. <u>Failure to Provide Meal and Rest Periods.</u> In his Third Cause of Action, Plaintiff alleges that Defendant failed to provide him with "compliant meal periods for working more than five (5) and/or ten (10) hours per day because [his] meal periods were missed, late, short, interrupted, and/or [he was] not permitted to take a second meal period." *Complaint*, ¶ 61. Under California Labor Code §§ 226.7(b) and 512, Plaintiff seeks one hour of additional pay at his regular rate for each work day Defendant allegedly failed to provide him a compliant meal period. *Complaint*, ¶¶ 62-64

Similarly, in his Fourth Cause of Action, Plaintiff alleges that Defendant paid him "on a per job basis and therefore never provided rest breaks." *Id*. ¶ 67. Plaintiff further claims that Defendant required him "to work through [his] daily rest periods and/or [was] not authorized to take [his] rest periods." *Id*. ¶ 70. Under Sections 226.7(b) and 512, Plaintiff seeks one hour of premium pay for "missed or interrupted rest periods." *Id*. ¶¶ 71-73.

Based on Plaintiff's allegations, Defendant assumes Plaintiff seeks one hour of premium pay per day of work for either a missed meal period or a missed rest period in that day of work.

1  Accordingly, Plaintiff's allegations under Sections 226.7 and 512 have put an additional $1,216.00 in controversy ($468.00 in 2020 (36 days x $13/hour x 1 break/day), and $793.00 in 2021 (61 days x $14/hour x 1 break/day)).

h.  *Attorney's Fees.* As authorized by California law, Plaintiff seeks an award of attorney's fees. *Complaint*, ¶¶ 5, 38, 43, 86, 88, 97, 101, 112, Prayer for Relief, ¶ 13. Specifically, Plaintiff seeks attorney's fees under California Code of Civil Procedure § 1021.5 (CCP Section 1021.5) and California Labor Code §§ 226(e), 1194 and 2802(c). *Complaint*, Prayer for Relief, ¶ 13. While Sections 226(e), 1194 and 2802(c) apply to claims brought under Sections 226, 1194 and 2802, respectively, CCP Section 1021.5 allows the court to award attorney's fees to a successful party if the action results in the enforcement of an important right and a benefit has been conferred on a large class of persons. CCP § 1021.5.

In *Fritsch v. Swift Transportation Co. of Arizona, LLC*, the Ninth Circuit concluded that "if the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are "at stake" in the litigation,' [] and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." 899 F.3d 785, 794 (9th Cir. 2018) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)). Accordingly, in addition to the amount Plaintiff has put in controversy on his underlying claims, he has also put his attorney's fees in controversy.

Defendant asserts that a very conservative estimate of the lodestar amount in this case will easily exceed $50,000. Specifically, in a recent case brought by Plaintiff's attorney, Jonathan M. Lebe (Mr. Lebe), under California's whistleblower statute, Mr. Lebe expended 366.51 hours in the three years he prosecuted the case. *See Declaration of Jonathan M. Lebe in Support of Plaintiff's Motion for Attorneys' Fees and Reasonable Costs*, *Ortega v. Carson Wild Wings, LLC, et al.*, No. BC677388 (L.A. Cty. Cal. Sup. Ct. Nov. 25, 2020) (*Ortega* case) (Lebe Decl.), ¶ 27, filed herewith as *Exhibit B* to this Notice. Prosecution of the case included three depositions, two summary judgment motions, a motion to compel, preparation of an expert witness, an 11-day trial and a post-trial motion. *Id.*, ¶¶ 1-29. Mr. Lebe attested that his hourly rate was $550 per hour. *Id.*, ¶ 27. In addition, Plaintiff's attorney, Zachary Gershman (Mr. Gershman), assisted Mr. Lebe in the case (Mr. Lebe and Mr.

Gershman, collectively, Plaintiff's counsel). *Id.*, ¶ 28. Mr. Gershman expended 361.47 hours on the case, at a rate of $250 per hour. *Id.* Plaintiff's counsel supported the reasonableness of their hourly rates using the Laffey Matrix, as adopted by the Civil Division of the U.S. Attorneys' Office for the District of Columbia, the Westlaw Court Express's Legal Billing Report, Vol. 14, No. 3, California Region for December 2012, and the National Law Journal survey of hourly billing rates for Partners and Associates. *Id.*, ¶¶ 33, 34 & Exhibits E, F, and G thereto. Plaintiff's counsel also sought double the lodestar amount based on their success on behalf of the *Ortega* case plaintiff. *Id.*, ¶ 24.

In the order on Plaintiff's counsel's motion, the court concluded that the hourly rates requested for Messrs. Lebe and Gershman were reasonable, particularly considering the contingent risk under *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-34 (2001). *Court Order on Motion for Attorneys' Fees*, *Ortega v. Carson Wild Wings, LLC*, No. BC677388, at 4 (L.A. Cty. Sup. Ct. Jan. 6, 2021), filed herewith as *Exhibit C* to this Notice. In addition, the *Ortega* court concluded the hours spent were "right in the ballpark for this kind of case." *Id.* The *Ortega* court, however, declined to apply any multiplier. *Id.* at 4-5.

Defendant assumes that in this wage and hour putative class action in which Plaintiff alleges nine causes of action that Plaintiff's attorneys will seek to obtain the same hourly rates for Messrs. Lebe and Gershman as those approved in the *Ortega* case: $550 per hour for Mr. Lebe, and $250 per hour for Mr. Gershman. This is a reasonable assumption based on the approval of those rates two years ago.

Using the *Ortega* case as a guidepost, it is reasonable to assume that Mr. Lebe, founding and managing partner of his firm, will expend a minimum of 100 hours on the pre-trial portion of this case. In addition, it is reasonable to assume that Mr. Gershman will expend a minimum of 50 hours on the pre-trial portion of this case. This is a very conservative estimate of the number of hours it will take to prosecute the pre-trial aspects of this case because of the number of issues raised by the allegations in Plaintiff's Complaint and Defendant's potential defenses thereto. Those issues include, but are not limited to, misclassification as an independent contractor, recent decisions under California law related to drivers of commercial motor vehicles, and recent decisions by the California Supreme Court regarding application of certain wage and hour laws to workers who do not perform

the majority of their work in any one state. Additionally, the hours estimated for Mr. Lebe and Mr. Gershman do not consider the class action components of this case, which were not at issue in the *Ortega* case.

In summary, it is reasonable to assume that to prosecute this case Mr. Lebe will seek $550 per hour for a minimum of 100 hours of work, and that Mr. Gershman will seek $250 per hour for a minimum of 50 hours of work, for a total lodestar amount of $67,500 in attorneys' fees.

    i.  <u>Summary of Estimated Amount in Controversy.</u> Based on the reasonable assumptions described in detail above, the total amount in controversy in this case is $70,295.66 in potential damages, and $67,500.00 in attorneys' fees, which far exceeds the statutory minimum of $75,000. A chart summarizing these amounts is set out below for the Court's convenience.

| Claim | Estimate of Amt in Controversy |
|---|---|
| Minimum Wage | $ 3,371.00 |
| Overtime | $ 3,783.00 |
| Wage Statement | $ 2,150.00 |
| Waiting Time Penalties | $ 3,360.00 |
| Cell Phone Expenses (2802) | $ 119.02 |
| Other Expenses (2802) | $ 31,197.37 |
| Lease Payments (221) | $ 25,054.27 |
| Meal & Rest Breaks | $ 1,261.00 |
| **ESTIMATED DAMAGES TOTAL** | $ 70,295.66 |
| Estimated Lodestar Attorney's Fees | $ 67,500.00 |
| **GRAND TOTAL** | $ 137,795.66 |

**6.    Timeliness of Removal.** Under 28 U.S.C. § 1446, a Notice of Removal may be filed within 30 days of receiving a copy of the complaint or, if the case stated by the complaint is not removable, within 30 days after the receipt of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. The 30-day removal period is not triggered by a complaint lacking specific allegations, for example, that the amount in controversy exceeds that statutory threshold of $75,000 for diversity jurisdiction. *Kuxhausen v. BMW Fin. Servs.*, 707 F.3d 1136, 1139 (9th Cir. 2013) (clock begins running only when the basis for removal is "revealed affirmatively in the initial pleading" (internal quotation

marks omitted)). Likewise, the second 30-day removal period only commences when the defendant receives another litigation paper from which it can be ascertained the jurisdictional prerequisites are satisfied. 28 U.S.C. § 1446(b)(3). As applied to the amount-in-controversy requirement, the clock commences only when the defendant receives a post-complaint pleading or other paper that affirmatively and unambiguously specifies a damage amount sufficient to satisfy the federal jurisdictional minimums. *See Kuxhausen*, 707 F.3d at 1139.

Nevertheless, a defendant may remove a case, even if the 30-day period under § 1446 has not commenced, based on the defendant's independent investigation of the amount-in-controversy given the plaintiff's allegations. *Roth v. CHA Hollywood Med. Ctr.*, L.P., 720 F.3d 1121, 1126 (9th Cir. 2013). Here, the 30-day removal period has not commenced because the Complaint did not disclose the amount-in-controversy on its face, and Defendant has not received a post-complaint pleading or other paper that affirmatively and unambiguously specified an amount of damages sufficient to satisfy the federal jurisdictional minimums.

7. **Notice of Removal to Adverse Parties and to State Court Clerk.** Under 28 U.S.C. § 1446(d), Defendant will give written notice of this removal to Plaintiff and to the Clerk of the Superior Court of Alameda County, California. Promptly after filing this Notice of Removal, Defendant will send to Plaintiff and will file with the Clerk of the Superior Court of Alameda County, California a Notice of Removal to Adverse Parties and State Court Clerk, a true and correct copy of which is filed herewith as *Exhibit D* to this Notice.

8. **No Waiver.** By filing this Notice of Removal, Defendant does not waive any available defenses.

WHEREFORE, Defendant respectfully removes this case to this Court.

Dated: February 17, 2022

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP

By: /s/ *Kathleen C. Jeffries*
Kathleen C. Jeffries
Attorneys for Defendant
WILSON LOGISTICS, INC.

# PROOF OF SERVICE

I, Michelle Lazo, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2 North Lake Avenue, Suite 560, Pasadena, California 91101.

On February 17, 2022, I served the foregoing document described as **DEFENDANT'S NOTICE OF REMOVAL** on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

> Jonathan M. Lebe
> jon@lebelaw.com
> Zachary T. Gershman
> zachary@lebelaw.com
> Nicolas W. Tomas
> nicolas@lebelaw.com
> LEBE LAW, APLC
> 777 S. Alameda Street, Second Floor
> Los Angeles, CA 90021

__   **(BY E-MAIL)**  or electronic transmission. I caused the documents to be sent to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

√   **(BY MAIL)**  I enclosed the document(s) in a sealed, stamped envelope addressed to the person(s) at the address(es) listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Scopelitis, Garvin, Light, Hanson & Feary, LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

__   **(STATE)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

√   **(FEDERAL)**  I declare under the laws of the United States that the above is true and correct.

Executed on February 17, 2022, at Norwalk, California.

_____
Michelle Lazo

4885-0897-6138, v. 6