UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMAS RUFF,<br><br>    Plaintiff,<br><br>    v.<br><br>WILSON LOGISTICS, INC.,<br><br>    Defendant. | Case No. 3:22-cv-00988-WHO<br><br>**ORDER ON MOTIONS TO REMAND AND TRANSFER**<br><br>Re: Dkt. Nos. 12, 18 |

Plaintiff Brian Thomas Ruff, an interstate trucker, filed this putative wage-and-hour class action against defendant Wilson Logistics, Inc. ("Wilson"). Ruff moves to remand the case to state court on the ground that Wilson has not shown that the amount in controversy exceeds the jurisdictional threshold. Wilson moves to transfer this case to the Western District of Missouri based on forum selection clauses in the parties' contracts. Both motions are denied. Wilson has shown that Ruff placed more than $75,000 in controversy. The claims are not governed by a valid forum selection clause and the factors governing transfer weigh in favor of keeping the case here.

## BACKGROUND

Ruff is a California citizen. Complaint ("Compl.") [Dkt. No. 1-1] ¶ 11. Wilson is a Missouri corporation with its principal place of business in Springfield, Missouri. Notice of Removal ("Not.") [Dkt. No. 1] 2. There is no dispute regarding the parties' citizenship. Ruff worked for Wilson between November 5, 2020, and April 21, 2021. Compl. ¶ 11; *see also* Opposition to Motion to Transfer ("Tran. Oppo.") [Dkt. No. 14] 1 (citing Declaration of Brian Thomas Ruff ("Ruff Decl.") [Dkt. No. 14-1] ¶ 2). According to Ruff, Wilson violated the California Labor Code by (among other things) failing to compensate him and other employees for all hours worked, provide them meal and rest breaks, and provide them accurate wage statements.

*See* Compl. ¶ 4. He also brings derivative claims for unfair competition. *Id*. ¶¶ 3, 6.

Ruff alleges that he worked for Wilson performing transportation services as a truck driver; he worked for specific shifts on a per-load basis and recorded his hours using a digital system in the trucks that he operated. *Id*. ¶ 22. Ruff and Wilson entered into two "Independent Contractor Operating Agreements" that contained forum selection clauses. *See* Tran. Oppo. 2 (citing Ruff Decl. ¶¶ 8–9). Those clauses provide,

> This Agreement shall be governed by the laws of the United States and of the State of Missouri, excluding the choice-of-law rules of Missouri. The parties agree that any legal proceedings between the parties arising under, arising out of, or relating to the relationship created by this Agreement, including arbitration proceedings discussed below, shall be filed and/or maintained in Springfield, Missouri or the nearest location in Missouri where such proceedings can be maintained.

*See* Motion to Transfer Case ("Tran. Mot.") [Dkt. No. 12] 4 (citing Declaration of Rhonda Thornton ("Thornton Decl.") [Dkt. No. 12-1], Exs. 1, 2). These contracts—including their forum selection clauses—were conditions of Ruff's employment with Wilson and were both signed after January 1, 2017. *See* Tran. Oppo. 1–2 (citing Ruff Decl. ¶¶ 8–9). Ruff was not represented by counsel when he signed either agreement, and he alleges that he "primarily lived and worked in California" while working for Wilson. *Id*.

Ruff brings claims for a "systemic pattern of wage and hour violations under the California Labor Code and IWC Wage Orders." Compl. ¶ 28. He seeks monetary relief for unpaid wages and benefits; interest; attorney's fees, costs, and expenses; and penalties pursuant to the California Labor Code. *Id*. ¶ 5. He also seeks injunctive relief and restitution for unfair competition. *Id*. ¶ 6.

On December 21, 2021, Ruff filed suit on behalf of himself and others similarly situated against Wilson in the Superior Court of the State of California for the County of Alameda. He asserts nine claims: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal periods, (4) failure to provide rest breaks, (5) failure to pay wages upon separation of employment, (6) failure to furnish accurate and itemized wage statements, (7) failure to reimburse all business expenses, (8) unlawful deduction of wages, and (9) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. *Id*. ¶¶ 39–112. Wilson filed an answer in state court, raising the issue of improper venue. Dkt. No. 7 at 3. Wilson

then removed the case to this court, premised on diversity jurisdiction. Dkt. No. 1.

**LEGAL STANDARD**

**I.      MOTION TO REMAND**

Generally, a case can be removed from state to federal court only when the federal court would have had original jurisdiction over it. 28 U.S.C. § 1441(a). The defendant has the burden of establishing federal subject matter jurisdiction. *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). Removability is "generally determined as of the time of the petition for removal." *Local Union 598, Plumbers & Pipefitters Industry Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1215 (9th Cir. 1988).

Under 28 U.S.C. § 1332(a)(1), federal diversity jurisdiction exists when each plaintiff is a citizen of a different state from each defendant and the amount in controversy exceeds $75,000. Natural persons are the citizens of the state in which they are domiciled—that is, the state in which they reside with intent to remain permanently. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Corporations are citizens of the state where they are incorporated and the state where they have their principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010).

Generally, "[i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). Where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing—by a preponderance of the evidence—that the amount in controversy exceeds the jurisdictional threshold." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013)). "[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

## II. MOTION TO TRANSFER

The general federal venue statute provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

A party moving to transfer venue may do so under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406, depending on whether the initial venue is proper. If the initial venue is proper, the moving party seeks a discretionary transfer under Section 1404(a), which provides that a district court may transfer the case to any other district in which the case could have been originally filed "[f]or the convenience of parties and witnesses" or "in the interest of justice." If the initial venue is improper, the moving party seeks a mandatory transfer under Section 1406, which provides that a district court "shall dismiss, or if it be in the interest of justice, transfer the case to any district or division in which it could have been brought."

Under Section 1404(a), courts generally balance a number of factors, including,

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Martinez v. BMW of N. Am., LLC*, No. 3:19-CV-05479-WHO, 2019 WL 6727837, at *2 (N.D. Cal. Dec. 11, 2019) (quoting *Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011)); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "The party moving for transfer of a case bears the burden of demonstrating transfer is appropriate." *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1060 (N.D. Cal. 2014) (Davila, J.).

4

**DISCUSSION**

**I.     MOTION TO REMAND**

Ruff argues that Wilson failed to show that the amount in controversy exceeds $75,000. *See* Motion to Remand ("Remand Mot.") [Dkt. No. 18] 1. For the reasons that follow, I conclude that more than $75,000 has been sufficiently shown to be in controversy.

**A.     Standard**

As a preliminary matter, the parties disagree on the proper standard for assessing the sufficiency of jurisdictional allegations. Ruff argues that Wilson is required to submit "summary judgment-style" evidence to support its position. *See* Remand Mot. 1. Wilson contends that this evidence is not necessary, but that it has shown by a preponderance of the evidence that Ruff's claims exceed the more-than-$75,000 jurisdictional threshold.[1] *See* Opposition to Remand Mot. ("Remand Oppo.") [Dkt. No. 21] 1, 3, 8.

"A removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)). But if the plaintiff contests the notice of removal's allegation, both sides may "submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 574 U.S. at 88 (quoting 28 U.S.C. § 1446(c)(2)(b)). There are two ways that a plaintiff may challenge a removing defendant's jurisdictional allegations. A "facial" attack "asserts that [allegations] are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks and citation omitted). Courts resolve this type of attack in the same way as a motion to dismiss. *See id*. In a "factual" attack, a plaintiff contests the truth of the defendant's factual allegations, and the defendant must support his allegations with "competent proof" under the summary judgment standard. *Id*.

---

[1] Wilson submitted evidence to support its factual assertions with its opposition. I treat this evidence as part of Wilson's notice of removal. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969)).

Here, the Complaint does not allege an amount in controversy, so Wilson must establish the amount in controversy by a preponderance of the evidence. *See Dart*, 574 U.S. at 88. Ruff's main argument is that Wilson's calculations must be rejected for failure to produce summary-judgment-style evidence. *See, e.g.*, Remand Mot. 5–6. This is a facial attack. *See Salter*, 974 F.3d at 964–65 (holding that an identical argument was a facial attack). Therefore, Wilson need only plead plausible allegations—relying on reasonable assumptions—that show by a preponderance of evidence that the amount in controversy is more than $75,000. *See id.*

### B. The Amount In Controversy Exceeds $75,000

Ruff next argues that Wilson made unreasonable, inflated assumptions—that have no support in the record—when calculating the amount in controversy. *See* Remand Mot. 1–2. Wilson replies that each assumption made was based on allegations from the complaint. *See generally* Remand Oppo. Wilson estimates that Ruff placed almost $122,000 in controversy, independent of attorney fees, when Ruff's regular pay rate is used in the calculations. *See id*. 1, 24. Ruff responds that Wilson has shown that at most $49,278.73 is in controversy. *See* Reply ISO the Remand Mot. ("Remand Reply") [Dkt. No. 22] 15.

Wilson has demonstrated that the threshold is met based on allegations in the complaint. Courts look to the complaint as the first source of reference in determining the amount in controversy. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). "[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927 (emphasis in original). In assessing this amount, a removing defendant may rely on a "chain of reasoning that includes assumptions," where "an assumption may be reasonable if it is founded on the allegations of the complaint." *Id*. at 925.

#### i. Lease Payments

Wilson contends that Ruff had $25,054.27 improperly deducted for truck lease payments from his pay and that this amount was placed in controversy by Ruff's complaint. *See* Remand Oppo. 9. Ruff does not contest this amount. *See* Remand Reply 15. This amount is properly in controversy.

### ii. Unreimbursed Expenses

One of Ruff's claims is that Wilson failed to reimburse him for transportation expenses. Based on this claim, Wilson contends that Ruff placed $31,197.37 in controversy, based on records of payments made to Ruff. Remand Oppo. 9. Ruff does not dispute the accuracy of the records; he argues instead that $12,500.93 of this figure *was* reimbursed to him based on the records. Remand Reply 5–6. Assuming that is true (I make no finding one way or the other), that would place $18,696.44 indisputably in controversy, which is the amount I will use for present purposes.

### iii. Wage Statements

Ruff brings claims that, based on the substantive wage-and-hour violations, Wilson provided inaccurate wage statements. Based on these claims, Wilson contends that Ruff placed $2,150 in controversy because Ruff alleged that none of his wage statements complied with California law. *See* Remand Oppo. 9–10 (citing Compl. ¶ 84). Ruff counters that Wilson impermissibly assumes a 100 percent violation rate for wage statements and that it failed to produce evidence to establish the number of pay periods for Ruff. *See* Remand Mot. 15–16.

Ruff alleged that Wilson failed to provide him complete and accurate wage statements because they lacked information, including "gross wages earned, net wages earned, hours worked, and all applicable hourly rates in effect during the pay period." *See* Compl. ¶ 84. Again, Ruff launches a facial attack. But Wilson did provide evidence—in the form of settlement statements issued to Ruff—to support its calculation, and none of the statements contain hours worked or hourly rates for Ruff. *See* Remand Oppo. 9–10 (citing Compl. ¶ 84; McGinnis Decl. at Ex. 4). Consequently, Wilson's assumption that all statements were at issue is reasonably founded on allegations in Ruff's complaint, and $2150 is in controversy on this claim. *See Arias*, 936 F.3d at 925, 927.

### iv. Wage-Based Calculations

The amount in controversy for several of Ruff's claims depends on the pay rate he was owed. In its Opposition, Wilson used Ruff's regular pay rate to evaluate Ruff's claims relating to wages. *See* Remand Oppo. 1–2. Wilson determined that Ruff's regular hourly rate was $63.30,

7

using total revenue paid to Ruff and IFTA data to estimate Ruff's total hours worked while under contract with Wilson. *See id.* 16.

Ruff responds that Wilson incorrectly used the total number of hours that Ruff worked during the entirety of his employment; he asserts that, under federal regulations, Wilson should have calculated Ruff's pay rate separately for each week that Ruff worked. *See* Remand Reply 7 (citing 28 C.F.R. § 778.109). Ruff does not provide an estimate of his regular rate; he uses minimum wage in all his estimates that are based on wages. He does not challenge the factual basis of Wilson's assertions. He does not dispute the amount that Wilson paid him or the number of miles driven while under contract with Wilson. He does not allege the total number of hours that he worked. And he does not provide any evidence that he earned less per hour than Wilson asserts.

Wilson relies on a chain of reasoning that includes assumptions that are founded on allegations in Ruff's complaint. Therefore, it is appropriate to use $63.30 as Ruff's regular hourly rate. Using that rate, I assess Ruff's waiting time and overtime claims.

### 1. Waiting Time Penalties

Ruff claims that he was not paid proper waiting time rates. Based on these claims, Wilson counters that Ruff placed $15,192 in controversy. *See* Remand Oppo. 18–19. While, as explained above, Ruff disputes the pay rate, he does not challenge the method used by Wilson to calculate these estimated penalties based on the rate. *See* Remand Reply 7. Wilson's assumptions for calculating these penalties are founded on allegations in Ruff's complaint and so $15,192 is in controversy for this claim.

### 2. Overtime

Ruff alleges that he was not paid proper overtime. Based on these claims, Wilson contends that Ruff has placed at least $14,599 in controversy for unpaid overtime for work performed in California. Remand Oppo. 16–17 (citing Ruff Decl. ¶ 14). Ruff counters that Wilson failed to provide evidence of Ruff's overtime pay rate or of the frequency of such unpaid overtime. *See* Remand Mot. 14–15.

I disagree with Ruff. He alleged that Wilson failed to pay him for all overtime hours

8

worked and requests overtime pay be determined based on his regular rate of pay. *See* Compl. ¶¶ 46, 52. Under California Labor Law, "for overtime work, an employee must receive a 50 percent premium on top of his or her regular rate of pay." *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 553 (2018) (citing Cal. Lab. Code § 510). This amount is triggered for "[a]ny work in excess of eight hours in one workday." Cal. Lab. Code § 510.

Ruff challenges the factual basis for Wilson's calculation. As discussed, Wilson provided sufficient evidence to support its calculation of Ruff's regular rate; California law provides the formula to determine Ruff's overtime rate. *See id*. In his declaration, Ruff states that driving routes between California and either Oregon or Washington each resulted in his driving 11 hours in a 14-hour window. *See* Ruff Decl. ¶¶ 12, 14. Although Ruff argues that minimum wage should be used for his non-productive time, he states that 11 hours of *driving time* occurred on these routes—at a minimum, the three hours over the eight-hour limit would not be compensated at minimum wage under Ruff's allegations. Therefore, Wilson's assumption that Ruff incurred overtime hours on certain routes is supported by allegations in Ruff's complaint, as well as by Ruff's admissions. At least $14,599 is in controversy on this claim.

### v. Conclusion

Based just on these categories, the amount in controversy exceeds $75,000. As a result, jurisdiction is appropriate and there is no need to consider the other categories the parties dispute.

## II. MOTION TO TRANSFER

As noted, the parties' contracts contained a forum selection clause designating Springfield, Missouri (or the closest available place in Missouri) as the forum for disputes arising from the contract. Wilson argues that the forum selection clauses in the parties' contracts apply to Ruff's claims. *See* Tran. Mot. 3. Ruff contends that California law precludes enforcement of the forum selection clauses and that the Section 1404 factors weigh against venue transfer. *See* Tran. Oppo. 1–2, 14–16. I conclude that transfer is not warranted.

### A. The Forum Selection Clauses Are Voidable Under California Labor Law

Ordinarily, a district court considering a Section 1404(a) motion would balance the factors discussed above. The presence of a forum selection clause would change that analysis. The

9

Supreme Court has held that "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). It has instructed that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. Denying transfer of claims like this would require "extraordinary circumstances unrelated to the convenience of the parties." *Id.*

I agree with Ruff that he can void the clauses under California Labor Code § 925, rendering them invalid. *See* Tran. Oppo. 4. The Ninth Circuit recently held that Section 925(b) controls the analysis of the clauses' validity in diversity cases. *See DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 964 (9th Cir. 2022). Section 925 is a California statute that "forecloses certain contracts with California employees and renders such agreements 'voidable by the employee' under specified conditions." *DePuy*, 28 F.4th at 958. The key provisions read:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
>> (1) Require the employee to adjudicate outside of California a claim arising in California.
>>
>> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.
>
> (e) This section shall not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied.

*Id.* at 958–59 (alteration and emphasis omitted) (citing Cal. Lab. Code § 925).

Wilson does not dispute that Ruff primarily lived in California; was required to agree to the contracts containing forum selection clauses as a condition of working for Wilson; entered into the contracts prior to January 1, 2017; and was not represented by counsel when he entered into

the contracts. Instead, the parties' dispute is whether Ruff "primarily works in California," as required for the statute to apply. The parties have not pointed to, and I have not found, definitive interpretations from the California courts about what is required for an employee to "primarily" work in California—whether it is simply a calculation of time, a qualitative assessment of the nature of the work performed in-state and out-of-state, or some combination. Regardless, for the reasons that follow, Ruff has adequately shown that he "primarily" worked in California, however construed.

Because of the nature of interstate trucking, it is inevitable that Ruff performed a meaningful portion of his work outside of the state. But he has shown that he was based in California and likely spent a majority of his work time in the state, which is sufficient. According to a sworn declaration that Ruff submitted, he lived in California and his job consisted of "delivering freight loads to and from California." Dkt. No. 14-1 ¶ 10. That alone is good evidence that he worked "primarily" in California, despite meaningful work in other states: California was the nexus of the work. He also states that his driving time consisted of trips from southern California to Oregon and Washington and back down. *Id.* ¶ 11. These trips took two days to complete, so he rested for the night in California. *Id.* Indeed, because he was entitled to 10-hour rest periods after 11 hours of driving, and a drive through California took more than 11 hours, he spent the night in California on each of these drives. *Id.* ¶ 12. He estimates that, as a result, "a majority" of his total working time took place in the state. *Id.* ¶¶ 11, 15. And he also prepared for trips at his home in California. *Id.* Accordingly, the record indicates that Ruff "primarily" worked in California.

To resist this finding, Wilson points primarily to records of Ruff's mileage and credit card purchases of fuel. Those records show that only about 36.5% of miles driven were in California and about 27% of fuel purchases were made in California. Tran. Mot. 4 (citing Thornton Decl. ¶¶ 14–19); Tran. Reply 3 (citing Declaration of Stefani Stovall ("Stovall Decl. 2") [Dkt. No. 16-1] ¶¶ 4–6, Ex. 3). But records of mileage and fuel purchases do not take into account total work time. As noted above, Ruff was legally entitled to 10 hours of rest after 11 hours of driving, which generally occurred in California. And Wilson's mileage figure does not undermine Ruff's

assertions about the non-driving work in California.

None of Wilson's cases compel a different conclusion. Many of them did not concern the validity of a forum selection clause under Section 925. And to the extent they considered where a plaintiff "primarily" worked, the plaintiffs there did not put forward any of the types of evidence that Ruff does here. *See Bromlow v. D & M Carriers*, LLC, 438 F. Supp. 3d 1021, 1030 (N.D. Cal. 2020) (White, J.); *v. FAF, Inc.*, No. 19-CV-142-WQH-BLM, 2019 WL 2574119, at *5–6 (S.D. Cal. June 20, 2019); *Aaron Cordero v. C.R. England, Inc.*, No. EDCV202675JGBKKX, 2021 WL 2793929, at *2 (C.D. Cal. Apr. 30, 2021).

Accordingly, the forum selection clause is void.

### B. Transfer of These Claims Is Not Warranted

Wilson argues that venue transfer is warranted. *See* Tran. Mot. 6. I conclude that, in the absence of a valid forum selection clause, Wilson has not met its burden demonstrating that balance of convenience and interests of justice factors clearly favor transfer. *See Saunders*, 71 F. Supp. 3d at 1060.

The decision to transfer venue under Section 1404 is a matter within the sound discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992). To reiterate, courts generally balance a number of factors, including,

> plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*See, e.g., Jones*, 211 F.3d at 498. California's public policy is also a significant factor. *See id.* at 499 ("We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.").

#### 1. Private-Interest Factors

"Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

12

the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine*, 571 U.S. at 63 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Here, the private-interest factors favor Ruff.

"[G]reat weight is generally accorded to a plaintiff's choice of forum, although that choice is given less weight when filed as a class action and where there are not significant contacts between the forum and the allegations of the complaint." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 777 (N.D. Cal. 2014) (Orrick, J.) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). In assessing this factor, "consideration must be given to the extent of both" the plaintiffs' and defendants' contacts with the forum relating to the cause of action. *Id.*

Ruff is a resident of Susanville, California, and he brought suit in Alameda County, California. *See* Compl.; Ruff Decl. ¶ 11. He has a legitimate and significant connection to this forum and is entitled to deference for suing in his home state. *See Ennis v. Aetna Life Ins. Co.*, No. 3:18-CV-01617-WHO, 2018 WL 4636197, at *3 (N.D. Cal. Sept. 24, 2018). Many of the operative facts occurred in California and there is no evidence of forum shopping; Ruff's choice does not merit lessened consideration. *See Lou*, 834 F.2d at 739. Although Wilson's corporate headquarters is in Missouri, it has hired citizens of California as truck drivers and implemented policies that allegedly violate California labor laws. That it is headquartered in Missouri "does not negate the local impact of [its] decisions when they are implemented elsewhere." *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1135 (N.D. Cal. 2019) (Orrick, J.) (citing *Karl*, 2018 WL 5809428, at *5).

The convenience of the parties and witnesses also leans in Ruff's favor. Ruff is an individual and is located in California, as will be the other members of his putative class. He also contends that his co-workers and supervisor are in California. *See* Tran. Oppo. 15. Wilson, though headquartered in Missouri, already has at least some contacts with California and is, in any case, a corporation that can more easily dispatch representatives and counsel to California than can Ruff to Missouri. Although Wilson argues that its employees are in Missouri, "[t]he convenience of a litigant's employee witnesses is entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum." *Lax*, 65 F. Supp. 3d at 779. And Ruff

13

1  contends that nearly all documents and sources of proof are located in California and that some
2  documents may be in Missouri.  *See* Tran. Oppo. 15.  Wilson does not counter this argument.
3  As a result, the private-interest factors tilt in Ruff's favor.

### i.   **Public-Interest Factors**

"Public factors include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Decker*, 805 F.2d at 843 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).  Here, the public factors also favor Ruff.

Most importantly, California has a strong interest in having California-centric labor disputes adjudicated in California—an interest it codified in Section 925.  *See DePuy*, 28 F.4th at 958–62; *Alabsi*, 2019 WL 1332191, at *17; *Karl*, 2018 WL 5809428, at *8.  Wilson's only real counterargument is that Ruff primarily worked outside of California, *see* Tran. Reply 6–7, but I reject that argument above.  As explained, the class would consist of workers who live and primarily work in California.

The other public-interest factors do not matter all that much, but they certainly are not enough to tip the balance in Wilson's favor.  Either federal court can competently apply California law (though, if anything, this court is already familiar with it, favoring Ruff).  *See Atl. Marine*, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 398 (S.D.N.Y. 2014) ("The forum's familiarity with the governing law is typically to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states." (internal citations and quotations omitted)).  There is no issue of consolidation that either party has raised.  And there is no issue of this court being overly congested.  Wilson contends that the Western District of Missouri resolves cases about three-and-a-half months faster than this court, but that difference of a few months is insubstantial compared to the other interests at stake.

Accordingly, the balance of all of the factors favors keeping the case here.

**CONCLUSION**

The motions to remand and transfer are DENIED.

**IT IS SO ORDERED.**

Dated: May 12, 2022



William H. Orrick
United States District Judge